**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonia Esposito and Karen Hardin, | No. CV-15-00767-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County Community College District, | |
| Defendant. | |

Before the Court is Defendant's Amended Motion for Summary Judgment (Doc. 57), Defendant's separate statement of facts in support of its motion (Doc. 58), Plaintiffs' response to Defendant's motion for summary judgment (Doc. 64), Plaintiffs' response to Defendant's statement of facts and Plaintiffs' separate statement of facts (Doc. 63), Defendant's reply in support of its motion for summary judgment (Doc. 67), and Defendant's objections to Plaintiff's response to Defendant's statement of facts and Plaintiffs' separate statement of facts (Doc. 68).

**I.    LEGAL STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255.

The Local Rules require that any party filing a motion for summary judgment file a statement, separate from the motion and memorandum of law, that sets forth each material fact on which the party relies in support of the motion. LRCiv. 56.1(a). Any party opposing a motion for summary judgment must file a separate controverting statement of facts that sets forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The moving party may file a reply memorandum, but the Local Rules do not authorize filing a separate statement responding to the nonmoving party's controverting statement of facts. *See* LRCiv 56.1(d). The moving party may include its objections to the nonmoving party's controverting statement of facts in its reply memorandum. LRCiv 7.2(m)(2). The moving party would need to seek and obtain leave to file another separate statement. If such leave were granted, the nonmoving party would be granted opportunity to respond.

Further,

> A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record. In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and citations omitted).

## II. MATERIAL FACTS BASED ON EVIDENCE VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS[1]

Defendant is the Maricopa County Community College District, a political subdivision of the State of Arizona, which manages and operates ten community colleges and two skill centers in Maricopa County, Arizona, including Mesa Community College. Shouan Pan has been the President of Mesa Community College since 2008. James

---

[1] The Court does not consider Defendant's Objections to Plaintiffs' Statement of Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. 68), which is not authorized by the Local Rules and for which leave of court was not sought. Further, the Court does not consider a fact disputed by Plaintiffs unless their denial is supported by a reference to the specific admissible portion of the record that controverts Defendant's assertion of fact. Explanation and argument are not considered assertions of fact.

Mabry was the Vice President of Academic Affairs at Mesa Community College from 2008 to January 2015. Rodney Holmes is the Dean of Instructional Arts, Humanities and Social Sciences at Mesa Community College and a former member and chair of the Counseling Department.

Plaintiffs are Sonia Esposito and Karen Hardin. Both are native-born U.S. citizens. Esposito is Latina in race and national origin and is now 49 years old. Hardin is African-American in race and is now 67 years old. Esposito has been a full-time faculty member of the Counseling Department at Mesa Community College since 2004. Hardin began working as a faculty member of the Counseling Department at Mesa Community College in 1990 and served as the Counseling Department chair from 2003 until September 2014. Hardin retired in May 2015.

Pan and Mabry frequently told Holmes they had concerns about how the Counseling Department was operating. Hardin also expressed to Holmes concerns she had regarding the administration. Mabry was critical of the Counseling Department, as well as of other departments, and expressed that the administration wanted changes. The administration wanted all of the counselors to teach, but not all did. The administration wanted all of the counselors to serve on committees, but not all did. The administration wanted all of the counselors' offices to be in a central location, but some wanted to remain in different locations. The administration wanted more accountability for counselors because counselors were not always available to service students. If new counselors were going to be hired, the administration did not want them to consider the current counselors to be role models.

During one Counseling Department meeting, Holmes announced that one of the counselors was turning 60 and asked her how long she planned to continue working. Then he went around the table asking others when they planned to retire. Holmes said they were not going to hire new counselors until the current ones retired. Holmes told members of the Counseling Department that Pan and Mabry simply did not like them and there was nothing they could do about it.

In September 2011, Plaintiffs attended a meeting of the Counseling Department during which President Pan said he "wasn't happy" with the Counseling Department and that "for the good of the college" he would have to "fire burn" the "old trees" in the Counseling Department to make room "for new growth." Both Plaintiffs were concerned that Pan was referring to them as the "old trees." During that meeting, Pan asked Esposito if she was Hispanic. Hardin recalled that President Pan also asked faculty members their ages. Rita Kasapis and Janice Reilly, both counselors, also attended the meeting and heard Pan's comment about burning the "old trees." Soon after, Mabry asked Reilly how many of the counselors were ready to retire.

In the fall of 2011, the Counseling Department did not submit a request for additional residential faculty for the 2012-13 academic year because Hardin believed making such a request would have been futile.[2] From 2012 to 2014, the Counseling Department lost four instructors due to retirement, which greatly increased the workload for the remaining six counselors. A new counselor was hired to begin in the fall of 2016.

In the spring of 2013, Hardin requested that Mabry participate in an Interest Based Negotiation session with the Senior Human Resources Manager to improve the relationship between the Counseling Department and the administration. During the session, Mabry expressed concern about the inability to locate counselors because the counselors were spread out in many locations on campus and did not have set office hours. As Hardin recalls it, Mabry said that he should buy an ankle bracelet to chain her

---

[2] Before 2015, Mesa Community College's hiring cycle for residential faculty was a two-year process, beginning with department chairs submitting requests to the Faculty Senate Committee, which vetted the requests and made ranked recommendations to the President and Vice President of Academic Affairs. The President's Cabinet determined the number of residential faculty positions that would be funded and approved the positions as ranked by the Faculty Senate Committee. After the hiring process for the 2014-15 academic year ended, Mesa Community College changed to a one-year process and therefore did not consider any requests for additional residential faculty in the fall of 2014. Requests for temporary faculty also were initiated by department chairs, but did not go through the same hiring process as for residential faculty.

to her desk, and Hardin perceived that comment to be related to her being African-American.

In May 2013, Holmes, claiming to be speaking on behalf of the administration, asked several counselors in the Counseling Department their ages and when they planned to retire. Reilly retired on May 11, 2013. Also in May 2013, at a meeting of the Counseling Department, Pan hit the table with his fist and told Hardin, "You're not going to hire any more black counselors." Pan then asked other faculty members to identify their race. On other occasions, Holmes also asked Esposito and other members of the Counseling Department to identify themselves based on race. Holmes repeatedly told Hardin and Esposito that the Counseling Department needed to hire a white male. Whenever Pan or Holmes directed Hardin not to hire an African-American or to hire a white male, they never said the counseling faculty needed to reflect the racial make-up of the student body or mentioned the need for diversity.

Defendant has a policy prohibiting harassment, a complaint form available on Defendant's website, an internal complaint process that may be initiated verbally or in writing, and an established grievance process. Defendant educates employees about its policies and procedures regarding employment discrimination. Although Hardin knew about the internal complaint process, she did not make an internal complaint because she was concerned about filing a complaint against the college president.

In September 2013, Hardin spoke to Reverend Oscar Tillman of the NAACP about comments that had been made. Tillman spoke to the Chancellor of the Maricopa County Community College District, who referred him to someone in the legal department who said Hardin could call him.

On December 6, 2013, Esposito filed a charge of discrimination with the EEOC against Defendant, alleging discrimination based on race, sex, national origin, age, and retaliation. On December 6, 2013, Hardin filed a charge of discrimination with the EEOC against Defendant, alleging discrimination based on race, color, sex, age, and retaliation. Neither Esposito's nor Hardin's charge of discrimination alleges any facts

indicating that she engaged in protected activity or that she had been subject to any specific retaliatory acts. Neither Hardin nor Esposito discussed retaliation in their EEOC questionnaire.

Holmes repeatedly asked Kasapis her age and when she planned to retire. Kasapis retired in March 2014 because of health problems and workplace stress. In August 2014, when Hardin asked Pan for a temporary position to replace Kasapis, Pan asked Hardin about Hardin's age. In September 2014, Hardin resigned her position as Counseling Department chair. Hardin retired in May 2015.

As a result of the discriminatory work environment in the Counseling Department, Esposito suffered from fear, anxiety, panic attacks, and high blood pressure, and Hardin suffered from anxiety, for which she sought professional help and resigned.

On January 27, 2015, the EEOC mailed to Plaintiffs right to sue letters. On April 27, 2015, Plaintiffs initiated this lawsuit, seeking money damages and equitable relief for discrimination and retaliation in the public workplace based on race, color, national origin, gender, and age under the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. Plaintiffs' Complaint does not allege separate causes of action for discrimination and retaliation or for age-based and race-based discrimination.

In response to Defendant's motion for summary judgment, Plaintiffs do not defend any claim for retaliation, any claim for discrimination based on gender, or any claim under 42 U.S.C. § 1981, and therefore have abandoned any such claims.

**III.  ANALYSIS**

    **A.  Violation of Title VII of the Civil Rights Act of 1964**

To establish a prima facie hostile work environment claim under Title VII, plaintiffs must raise a triable issue of fact regarding whether they were subjected to verbal or physical conduct because of their race, the conduct was unwelcome, and the conduct was sufficiently severe or pervasive to alter the conditions of their employment

and create an abusive work environment. *Manatt v. Bank of Am. NA*, 339 F.3d 792, 798 (9th Cir. 2003). Defendant contends that the undisputed evidence establishes as a matter of law that neither Plaintiff was subjected to an unlawful hostile work environment based on race because there is no evidence that the inappropriate comments were sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

Plaintiffs have produced evidence that, more than once, Pan, Mabry, and Holmes asked them and other counselors questions about their race in front of others, stated that no African-American counselor should be hired, and stated that they needed to hire a white male. Defendant asserts that when racial questions were asked and comments about racially diverse hiring were made, no new counseling positions had been authorized, and no actual hiring was in process. Defendant further asserts that when Mabry said he should buy an ankle bracelet to chain Hardin to her desk, he was referring to the entire Counseling Department, and the comment was made in the context of not being able to locate counselors. Defendant contends that, compared to examples from other cases, the questions and comments here are not severe. The evidence does not clearly show how pervasive these comments were.

On this record, it cannot be concluded that as a matter of law the inappropriate comments were not sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

**B.  Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA")**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). Plaintiffs contend that the Court must consider evidence of race discrimination in combination with evidence of age discrimination because when a plaintiff is claiming both race and sex discrimination

under Title VII, it is necessary to determine whether it discriminates on the basis of that combination of factors.  *Lam v. University of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994).  However, Plaintiffs cite no authority for extending this principle under Title VII to claims under the ADEA.

Plaintiffs assert that Defendant discriminated against them with respect to conditions of employment because of their age.  Pan, Mabry, and Holmes told Plaintiffs and others that the administration did not like the way the Counseling Department was operating and did not want to hire any new counselors until the current counselors retired.  They repeatedly asked Plaintiffs and others about their ages and plans for retirement.  Pan told Plaintiffs and others he needed to "fire burn" the "old trees" to make room for "new growth."  As a result, as counselors retired and were not replaced, Plaintiffs and the remaining counselors were responsible for servicing an increasing number of students and were criticized when they were not available to do so.  Further, they were criticized for not teaching enough classes, not serving on enough faculty committees, and not being in their offices more.  Esposito was required to move her office to a less desirable location that made it more difficult for her to perform her job duties as effectively.  These conditions caused Plaintiffs stress, anxiety, and health problems and led to Hardin resigning from her department chair position.

Defendant contends that Plaintiffs' claim under the ADEA fails because they have not submitted evidence of "severe or pervasive" age-based comments.  It offers an explanation for Pan asking Plaintiffs' ages and referring to "old trees."  But Defendant concedes that the evidence must be viewed in the light most favorable to Plaintiffs on summary judgment.  The severity and pervasiveness of the age-based comments are genuine issues of material fact, as are issues regarding the timing and causation of the allegedly hostile work conditions.

Further, Defendant contends that because the charges Plaintiffs filed with the EEOC did not allege that Defendant discriminated against them by not hiring more counselors, criticizing them, and moving Esposito's office, Plaintiffs are precluded from

presenting such evidence now. Hardin's charge refers to "a discriminatory working environment," and Esposito's charge refers to "a hostile work environment." In Defendant's 2014 correspondence to the EEOC, responding to Plaintiffs' charges, Defendant said Plaintiffs' claims of an unlawful hostile work environment had nothing to do with race or age, but rather arose out of friction caused by the College's new administration placing different expectations on the Counseling Department, including teaching more classes, being more available, and being more accountable for their time. (Doc. 68-1 at 5-12.) Thus, these conditions, which Plaintiffs allege were imposed because of Plaintiffs' age, are fairly encompassed in their EEOC charges of discrimination.

### C. Defendant's *Faragher/Ellerth* Defense

An employer may be held liable for a hostile work environment under two theories: (a) vicarious liability where the accused harasser is a supervisor or (b) negligence where the employer knew or should have known that harassment by a co-worker was taking place, but did not take adequate steps to address it. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). Under both theories, an employer can escape liability if it establishes an affirmative defense comprised of two elements:

    a.    the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and

    b.    the plaintiff employee failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* at 802 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

It is undisputed that Defendant had policies and procedures in place to prevent and correct workplace harassment, and Plaintiffs did not use the internal complaint process to address their race and/or age-based concerns. However, the allegedly harassing behavior was reported to Defendant through Reverend Tillman. He was asked to advise Hardin to

contact district authorities. She did not. This is a close question. But the Court cannot say on this sparse record that the *Faragher/Ellerth* defense has been proved.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 57) is granted only to the extent that Plaintiffs' claims are limited to claims for racial and age-based harassment/hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The Motion is otherwise denied.

Dated this 20th day of December, 2016.

Neil V. Wake
Senior United States District Judge